IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL KNOX, | ) | CASE NO. 1:19-CV-02336-JGC |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| STATE OF OHIO, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | |
| | ) | **REPORT & RECOMMENDATION** |

## I.    Introduction

Petitioner, Michael Knox, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Knox is currently serving an aggregate 16-year to life prison term and a five-year term of post-release supervision for kidnapping and rape with specifications. Knox asserts four grounds for relief. (ECF No. 1). Respondent, State of Ohio, filed a return of writ on June 1, 2020. (ECF No. 9). Knox filed a traverse on June 11, 2020 (ECF No. 10) and a supplement on June 22, 2020 (ECF No. 11). On June 26, Respondent filed a reply to the traverse and supplement. (ECF No. 12).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Knox's petition and other case-dispositive motions. Because Knox has presented meritless claims, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

## II.     Relevant Factual Background

The Ohio Court of Appeals for the Eighth Appellate District set forth the following facts[1]

on direct appeal:

> {¶2} In 2016, Knox was indicted in a five-count indictment. Count 1 charged anal rape of P.H. on August 24, 1999, in violation of R.C. 2907.02(A)(2); Count 2 charged vaginal rape of P.H. on August 24, 1999, in violation of R.C. 2907.02(A)(2); Count 3 charged kidnapping of P.H. on August 24, 1999, in violation of R.C. 2905.01(A)(4), with a sexual motivation specification; Count 4 charged rape of J.S. on August 31, 1999, in violation of R.C. 2907.02(A)(2); and Count 5 charged kidnapping of J.S. on August 31, 1999, in violation of R.C. 2905.01(A)(4), with a sexual motivation specification. All counts carried a sexually violent predator specification.
>
> {¶3} Knox pleaded not guilty.
>
> A. Motion to Dismiss for Preindictment Delay
>
> {¶4} The trial court subsequently held a hearing on Knox's motion to dismiss for preindictment delay. At the hearing, Knox testified that in August 1999, he and his friends RaShawn Mosley and James Campbell would drive around Cleveland and look for prostitutes who would exchange sex for drugs.
>
> {¶5} Knox said that he recalled having consensual sex with a female prostitute on August 24, 1999, at 7907 Cedar Avenue, but denied using any force or physical violence during this encounter. Knox also admitted to having consensual sex with a female prostitute in the area of East 37th Street and Community College Avenue on August 31, 1999, and denied using any force or violence during this encounter. He said that Mosley and Campbell were with him when he made arrangements to pay both prostitutes and observed him having sex with them. Knox testified that Mosley and Campbell also had sex with the prostitutes but said they used condoms, while he did not.

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

{¶6} On cross-examination, Knox admitted that he was not with Mosley and Campbell every day in August 1999. He also said that he could not remember specifically what he did every day in August 1999; he just remembered the incidents described above because he recognized the addresses.

{¶7} Knox said his DNA was swabbed in 2006 while he was incarcerated at the Lorain Correctional Institution. He said that in 2007, two Cleveland police detectives met with him at the Wayne County Jail in Detroit, Michigan, and told him that his DNA had come up in a CODIS hit in a cold case.[1] Knox testified that he was not indicted until 2016, however, and by that time, both Mosley and Campbell were dead. Knox provided the death certificates of both Mosley and Campbell to the court.

{¶8} Christina Cottom, a detective with the Cleveland police department sex crimes and child abuse unit, testified that in September 2006, she was advised by CODIS that Knox's DNA had been linked to the rape kit in P.H.'s case. CODIS requested an additional DNA sample from Knox for re-examination to confirm the CODIS hit. Det. Cottom testified that she tried to find P.H. in order to interview her and have her look at a photo array of possible suspects, but although she went to several homes and spoke with several people, was unable to locate her. Det. Cottom testified that because she could not locate P.H., the case was held in abeyance, per departmental policy, and no confirming DNA swab was taken from Knox.

{¶9} Det. Cottom testified that in July 2014, she was advised that the DNA in J.S.'s rape kit matched Knox's. Det. Cottom said that was the first time that the Cleveland Police Department was aware that Knox was potentially involved in two rapes. Det. Cottom testified that she does not know why there was a 15-year delay between J.S.'s rape and the testing of her rape kit, but said her kit was likely finally tested as part of Ohio's Sexual Assault Kit Initiative. She admitted, however, that Knox's DNA was in the CODIS system as of 2006.

{¶10} After the hearing, the trial court denied Knox's motion to dismiss for preindictment delay. Immediately prior to trial, the court heard arguments regarding Knox's motion for relief from prejudicial joinder; the court denied the motion.

B. Trial

1. Testimony Regarding J.S.

3

{¶11} J.S. testified at trial that she was 40 years old on August 31, 1999. She admitted that she was using alcohol and crack cocaine every few days in August 1999, and would sometimes exchange sex for drugs. She said that as she was walking home around 3:00 a.m. on August 31, 1999, in the area of East 37th Street and Community College Avenue, she "ran into a guy," and started talking to him. When she asked the male if he got high, he told her to follow him and he would "hook her up."

{¶12} J.S. said that they began walking together, but when they walked by a field, the male suddenly grabbed her arm, knocked her down, and forced her to lie face down on the ground. She said that he punched her in the face every time she tried to look up and told her, "shut up, keep your head down, I'll kill you." J.S. said he pulled her pants down, forcibly inserted his penis in her vagina, and ejaculated. She said that when he was finished, he hit her again, told her not to move, and then ran away.

{¶13} J.S. testified that she went home and called her boyfriend, who picked her up and took her to St. Vincent Hospital where a rape-kit examination was performed. J.S. said that the police interviewed her at the hospital, and she told them that she did not know her attacker. She testified that she then heard nothing from the police about the incident until 2015, when a police investigator appeared at her door to interview her.

{¶14} J.S. testified that on August 12, 2015, the police showed her a photo array but she was unable to identify her attacker. However, she identified Knox in court as the man who raped her, stating, "I know what he look like now. I mean, it's been years, but when I seen the lineup and it all came back to me." On cross-examination, J.S. admitted that although she could not identify Knox at first in the photo array as her assailant, "they [i.e., the police investigators] kind of like guided me" and helped her remember.

{¶15} Heather Bizub, a forensic scientist with Ohio's Bureau of Criminal Investigation ("BCI"), testified that J.S.'s rape kit was submitted to the BCI laboratory in November 2013 with a request for DNA analysis. Bizub said that on May 8, 2014, she generated a report indicating there was DNA from one male on the vaginal samples from the rape kit. She testified that Knox's DNA sample was submitted to BCI in March 2018, and in April 2018, she generated a report indicating that Knox's DNA was consistent with the DNA found on the vaginal samples in J.S.'s rape kit.

4

{¶16} Dr. Thomas Collins testified that he treated J.S. in MetroHealth's Emergency Department on August 31, 1999. He said that she reported to the Emergency Room at 7:40 a.m., complaining that she had been attacked by an unknown assailant, beat in the face with a fist, and vaginally penetrated by an assailant who was not wearing a condom. J.S.'s diagnosis was sexual assault, shoulder dislocation, eye trauma, contusions, and abrasions. Dr. Collins testified that the Emergency Room triage notes indicated that J.S. was teary and fearful about going home. The notes also indicated that a sexual assault kit was collected from J.S., including oral and vaginal swabs.

{¶17} Sonya Dziuba, an investigator with the Cuyahoga County Prosecutor's Office, testified that she was assigned to investigate J.S.'s case in 2015. She accompanied investigator Gary Harris to J.S.'s residence on August 12, 2015, where they showed her a photo array. She said that J.S. did not identify anyone from the array as her assailant and wrote "I'm not sure" on the array. She said it was only after the photo array process was completed that investigator Harris guided J.S. to Knox's picture on the array.

2. Testimony Regarding P.H.

{¶18} George Sakellakis testified that he worked as a paramedic for the city of Cleveland EMS in August 1999. He said he responded to P.H.'s residence at 3:32 a.m. on August 24, 1999, regarding a call that a female had been raped. Sakellakis testified that he interviewed P.H. to ascertain what had happened and what medical treatment she needed. He said that P.H. told him that as she was walking down the street, a male grabbed her by the neck, dragged her behind some bushes, choked her, threw her to the ground, and sexually assaulted her. P.H. also told him that her assailant hit her face and torso with his fist, and when she tried to resist, he choked her. According to Sakellakis, P.H. said that the assailant then raped her and ejaculated inside her.

{¶19} Cleveland police detective Eugina Gray testified that she was a patrol officer in August 1999, and responded to P.H.'s home on August 24, 1999. Gray said that after interviewing P.H., she made arrangements for P.H. to be transported to the hospital, and then she returned to the police station and filed a report.

{¶20} Dr. Joseph Haluska testified that P.H. arrived at the Mt. Sinai Hospital Emergency Room at 3:55 a.m. on August 24, 1999, complaining of bilateral rib and flank pain and sexual assault. Dr. Haluska testified that P.H.'s medical records indicate that she

reported that she had been walking down the street when a male grabbed her by the neck, dragged her behind some bushes, hit her with his fists, choked her when she tried to resist, and then vaginally and rectally raped her.

{¶21} Dr. Haluska testified that P.H.'s eyes and face were swollen, she had bruises around her eyes, and her pelvic and rectal areas were tender to touch. He testified that upon examination, he found a foreign material that he thought was possible grass or a piece of a leaf in P.H.'s vagina. He testified that swabs and smears were collected from P.H.'s mouth, vagina, and rectum, and that she was "tearful and withdrawn" during the examination.

{¶22} Tina Stewart testified that she was a serologist in the Cleveland Police Department forensic laboratory in 1999. She said that she analyzed P.H.'s rape kit, which was submitted to her on August 24, 1999, and found semen present on the vaginal swabs. She testified that P.H.'s rape kit was sent to the BCI in September 2002, and returned to the Cleveland Police Department laboratory in July 2004, and ultimately sent to the Cleveland police property room.

{¶23} Heather Bizub testified that in March 2018, she received Knox's DNA sample at BCI, and then compared it to the DNA identified on the vaginal swabs in P.H.'s rape kit. Bizub testified that she submitted a report indicating that Knox's DNA matched the DNA found on the vaginal swabs. Bizub admitted that no DNA analysis was done on the anal swabs or P.H.'s clothing.

{¶24} Sonya Dziuba testified that P.H.'s case was joined with J.S.'s case because the DNA evidence in both cases pointed to the same suspect. Dziuba testified that upon reviewing the file, she learned that P.H. had died in January 2013, and after reviewing various reports, she determined there were no other witnesses to interview. Dziuba said that she compared the locations of the attacks and Knox's residential history and determined the attacks had occurred roughly two and one-half miles apart, in the general area where Knox had lived.

{¶25} On cross-examination, Dziuba reviewed defense exhibit A, a police report dated August 6, 2014, which included the narrative of the original police report regarding P.H., and a notation made by the original detective assigned to the case that he had made several unsuccessful attempts to locate P.H. and "until victim comes forward and further assists with this investigation, we have no further investigative leads."

6

{¶26} On redirect examination, Dziuba read the original victim report narrative into the record as follows:

Victim states that while walking northbound on E. 79th at Cedar, when someone came from nowhere and grabbed her from behind choking her and drug victim behind 7907 Cedar. Victim states suspect told her that he just got out of jail and, "shut up bitch or I'll kill you." Suspect then forced victim to remove her pants and pulled up her shirt, all while punching victim in the facial area and chest. Suspect then forced victim to the ground, first on her stomach and raped her in the anus twice without ejaculating, then rolled her onto her back and raped her in the vagina, 4 or 5 times and had an ejaculation each time, still punching victim. Victim states suspect stated to her, "Can you have anymore kids?" Victim stated, "Yes." Suspect then stated, "You gonna have my kid tonight." After suspect was finished, he ran westbound on Cedar. Victim stated that she flagged down an EZP truck (empowerment zone pouch), who conveyed her home and advised her to call 911. Victim states that she bit one of suspect's arms and one of his fingers (unsure which one). Victim conveyed to Mt. Sinai by EMS # 9.

{¶27} Knox's theory of the case throughout trial was that J.S. and P.H. had been assaulted, but that he had consensual sex with them in exchange for drugs.

*State of Ohio v. Knox*, No. 107414, 2019-Ohio-1246, ¶¶ 2-27 (8th Dist. Ohio April 4, 2019).

## III.   Relevant State Procedural History

### A.   Indictment

Knox was indicted on November 28, 2016, for:

Count 1: Rape, R.C. 2907.02(A)(2), felony of the first degree, with sexually violent predator specification (R.C. 2941.148(A));

Count 2: Rape, R.C. 2907.02(A)(2), felony of the first degree, with sexually violent predator specification (R.C. 2941.148(A));

Count 3: Kidnapping, R.C. 2905.01(A)(4), felony of the first degree, with sexual motivation specification (R.C. 2941.147(A)) and sexually violent predator specification (R.C. 2941.148(A));

Count 4: Rape, R.C. 2907.02(A)(2), felony of the first degree, with sexually violent predator specification (R.C. 2941.148(A)); and

7

> Count 5: Kidnapping, R.C. 2905.01(A)(4), felony of the first degree,
> with sexual motivation specification (R.C. 2941.147(A)) and
> sexually violent predator specification (R.C. 2941.148(A)).

(ECF No. 9-1, Ex. 1). At arraignment, Knox plead not guilty to all charges. (ECF No. 9-1, Ex. 2).

### B.    Trial and Guilty Verdict

Following an assortment of pre-trial motions filed both pro se and through counsel, the matter proceeded to a jury trial. The jury found Knox guilty of two first-degree felony rape charges and two first-degree felony kidnapping charges with sexual motivation charges. (ECF No. 9-1, Ex. 18).  The trial court filed a *nunc pro tunc* entry to reflect that Knox voluntarily waived a jury on the sexually violent offender specifications. (ECF No. 9-1, Ex. 19).  Subsequently, the trial court found Knox guilty of four sexually violent predator specifications. (ECF No. 9-1, Ex. 20).  Upon joint agreement, the trial court merged Knox's convictions of rape and kidnapping of victim 1 (Counts 2 and 3) and the rape and kidnapping of victim 2 (Counts 4 and 5) for sentencing purposes. The court then sentenced Knox to 8 years to life in prison for the two sets of merged counts resulting in an aggregate 16-years-to-life in prison sentence and ordered the sentences to run consecutive to Knox's unrelated sentence in *Michigan v. Michael Knox*, Case No. 07-007400-01-FC under which Knox was incarcerated at the time of sentencing. (Exhibit 20) The trial court also classified Knox as a sexual predator and journalized Knox's sentencing entry on June 6, 2018. (Exhibit 20).

### C.  Direct Appeal

On appeal, Knox raised four assignments of error:

> 1. The trial court erred when it denied Defendant-Appellant's
>    motion to dismiss for prejudicial pre-indictment delay where the
>    Defendant established actual prejudice to his ability to defend
>    himself due to the unavailable testimony of two key witnesses

and exculpatory evidence that was lost as the result of the victim's death and there was no justifiable delay.

2. The trial court erred when it denied Defendant-Appellant's motion for relief from prejudicial joinder where the Appellant established that joinder of the offenses against each Victim prejudiced him because it allowed the jury to hear evidence of other acts that would not have been admissible at separate trials.

3. Where the quality of evidence did not support the trier of facts (sic) verdict of guilt, as neither of the Victims identified the Appellant as their assailant, the State failed to put forth evidence that Appellant was present at the scene and had committed the offenses, the Appellant's convictions were against the manifest weight of the evidence.

4. The trial court erred by allowing admission of the deceased Victims' statements to the police and medical professionals, as the statements constituted testimonial hearsay and its admission violates Appellant's constitutional right to confrontation since Appellant had no opportunity to confront or cross-examine his accuser.

(ECF No. 9-1, Ex. 23 at PageID #: 326).

The State of Ohio filed an Appellee's brief (ECF No. 9-1, Ex. 24), and on April 4, 2019, the state appellate court overruled Knox's error assignments and affirmed his convictions and sentences but remanded the matter and ordered the trial court to issue a *nunc pro tunc* sentencing entry that specified "Knox is a Tier III sex offender" rather than the generic "defendant is now a sexual predator" the Court had previously noted. *State v. Knox*, 2019-Ohio-1246. (ECF No. 9-1, Ex. 25).

### D. Appeal to the Ohio Supreme Court

On May 10, 2019, Knox appealed pro se to the Ohio Supreme Court. (ECF No. 9-1, Ex. 27). Knox's memorandum in support of jurisdiction raised the following propositions of law:

**Proposition of Law I:** The trial court erred when it denied Defendant-Appellant's motion to dismiss for prejudicial pre-indictment delay where the Defendant established actual prejudice

9

to his ability to defend himself due to the unavailable testimony of two key witnesses and exculpatory evidence that was lost as the result of the victim's death and there was no justifiable delay.

**Proposition of Law II:** The trial court erred when it denied Defendant-Appellant's motion for relief from prejudicial joinder where the Appellant established that joinder of the offenses against each Victim prejudiced him because it allowed the jury to hear evidence of other acts that would not have been admissible at separate trials.

**Proposition of Law III:** Where the quality of evidence did not support the trier of facts (sic) verdict of guilt, as neither of the Victims identified the Appellant as their assailant, the State failed to put forth evidence that Appellant was present at the scene and had committed the offenses, the Appellant's convictions were against the manifest weight of the evidence.

**Proposition of Law IV:** The trial court erred by allowing admission of the deceased Victims' statements to the police and medical professionals, as the statements constituted testimonial hearsay and its admission violates Appellant's constitutional right to confrontation since Appellant had no opportunity to confront or cross-examine his accuser.

(ECF No. 9-1, Ex. 27 at PageID #: 433-434). On July 23, 2019, the Ohio Supreme Court declined jurisdiction. (ECF No. 9-1, Ex. 29).

### E.  Ohio App. R. 26(B) Application to Reopen

Knox timely filed an amended petition to reopen his appeal pursuant to Ohio App. R. 26(B). (ECF No. 9-1, Exs. 32 & 33). The State of Ohio did not respond and on September 3, 2019, the state appellate court denied Knox's application to reopen his direct appeal. (ECF No. 9-1, Ex. 33)

Knox did not timely appeal to the Ohio Supreme Court and his filing deadline expired October 18, 2019. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i); Ohio S. Ct. Prac. R. 3.03(A)(1).

## IV.  Federal Habeas Corpus Petition

On October 8, 2018, Knox petitioned pro se that this Court issue a writ of habeas corpus. (ECF No. 1). Knox does not specifically designate any grounds for relief in his petition. Instead,

for each of the four grounds, Knox directs the Court to review his state court appellant's brief. (*See* ECF No. 1, PageID #: 5 ("Please refer to Appellant's Brief and Assignments of Error"); PageID #: 7, 8, and 10 (same)). Ordinarily, "[t]his Court cannot entertain a Habeas Petition that does not contain specific grounds for relief." *Dugas v. May*, No. 3:21 CV 2191, 2022 WL 485306, at *2 (N.D. Ohio Feb. 17, 2022). "It is not the role of the Court to study the narrative in the Petition, and construct possible but not asserted claims for any litigant, including a pro se Petitioner, and then proceed to test whether the asserted facts fit that claim or claims." *Id.* This is because "[t]he Court's role is to adjudicate disputes, not assist in asserting them." *Id.* In *Dugas*, the petitioner attached portions of his civil rights complaint and indicated that potential video evidence in that action would lead to the *creation* of grounds for relief in the habeas action. Here, Knox has directly incorporated the state appellate issues as his grounds for relief (and attached the Appellant's Brief to the petition). Although this is not the preferred route for asserting grounds in a habeas action, Knox's method adequately informs the Court and the Respondent of his arguments. Accordingly, the Court interprets the Petition as asserting the following four grounds for relief:

> **Ground One:** The trial court erred when it denied Defendant-Appellant's motion to dismiss for prejudicial pre-indictment delay where the Defendant established actual prejudice to his ability to defend himself due to the unavailable testimony of two key witnesses and exculpatory evidence that was lost as the result of the victim's death and there was no justifiable delay.

> \*

> **Ground Two:** The trial court erred when it denied Defendant-Appellant's motion for relief from prejudicial joinder where the Appellant established that joinder of the offenses against each Victim prejudiced him because it allowed the jury to hear evidence of other acts that would not have been admissible at separate trials.

> \*

11

**Ground Three:** Where the quality of evidence did not support the trier of facts (sic) verdict of guilt, as neither of the Victims identified the Appellant as their assailant, the State failed to put forth evidence that Appellant was present at the scene and had committed the offenses, the Appellant's convictions were against the manifest weight of the evidence.

\*

**Ground Four:** The trial court erred by allowing admission of the deceased Victims' statements to the police and medical professionals, as the statements constituted testimonial hearsay and its admission violates Appellant's constitutional right to confrontation since Appellant had no opportunity to confront or cross-examine his accuser.

(ECF No. 1 at 1-16, ECF No. 1-1 at 5).

## V.     Legal Standards

### A.     Timeliness of Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year period of limitations for state prisoners to file their federal habeas corpus petitions. *Wall v. Kholi*, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)); *Sexton v. Wainwright*, 968 F.3d 607, 609-10 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1064 (2021). There is no dispute that Knox timely filed his federal habeas corpus petition within the 28 U.S.C. §2244(d) 1-year statute of limitations. (*See* ECF No. 9 at 15).

### B.     Jurisdiction

Title 28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Cuyahoga

12

County sentenced Knox, and Cuyahoga County is within this court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Knox's § 2254 petition.

### C. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law … are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

### D. Exhaustion

"A federal habeas corpus court should not grant a habeas corpus application by a state prisoner unless he has exhausted all of his available state court remedies on his grounds for relief. 28 U.S.C. § 2254(b) and (c)." *Gordon v. Bradshaw*, No. 104 CV 2299, 2007 WL 496367, at *12 (N.D. Ohio Feb. 12, 2007). "A petitioner satisfies the exhaustion requirement once the state supreme court provides him with an opportunity to review his claims on the merits and the state supreme court has had a full and fair opportunity to rule on the claims." *Id.* (citing *Dickerson v.*

*Mitchell*, 336 F.Supp.2d 770, 786 (N.D. Ohio 2004) (citing *O'Sullivan v. Boerckel,* 526 U.S. 838,

119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994); *Manning*

*v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990))). "If a remedy remains under state law that a

federal habeas corpus petitioner has not yet pursued, exhaustion has not occurred and the federal

habeas court cannot review the merits of the claim." *Id*. (citing *Rust*, 17 F.3d at 160). "When a

petitioner has failed to exhaust his state remedies, and when he can no longer do so under state

law, his habeas claim is procedurally defaulted." *Adams v. Burton*, No. 16-1476, 2016 WL

6610219, at *2 (6th Cir. Nov. 8, 2016) (citing *O'Sullivan*, 526 U.S. at 848).

### E.  Procedural Default

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal

constitutional claim by state courts because he failed to: (1) comply with a state procedural rule

that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise

that claim before the state courts while state remedies were still available. *See generally*

*Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460

F.3d at 806. In determining whether there has been a procedural default, the federal court again

looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805

(1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).  When a state court declines to address

a prisoner's federal claims because the prisoner failed to meet a state procedural requirement,

federal habeas review is barred as long as the state judgment rested on "independent and adequate"

state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a

state procedural rule and the state courts' application of it must not rely in any part on federal

law. *Id*. at 732-33. To be adequate, a state procedural rule must be "'firmly established' and

'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). A petitioner can overcome a

procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

## F.    AEDPA Standard of Review

Title 28 U.S.C. § 2254, as amended by the AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that

they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*.

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas

17

court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## VI.     Discussion

### A.       Ground One

In Ground One, Knox argues that "[t]he trial court erred when it denied [his] motion to dismiss for prejudicial pre-indictment delay where the Defendant established actual prejudice to his ability to defend himself due to the unavailable testimony of two key witnesses and exculpatory evidence that was lost as the result of the victim's death and there was no justifiable delay." (ECF No. 1 at 5). Respondent argues that Ground One should be denied because the state appellate court

reasonably denied Knox's federal constitutional claims and that decision is entitled to AEDPA deference in this proceeding because the decision is not contrary to or an unreasonable application of clearly established Supreme Court precedent pertaining to pre-indictment delay, the Confrontation Clause, and federal constitutional due process. Respondent additionally argued that Knox has not established a federal constitutional violation and Ground One lacks merit.

The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution "the right to a speedy and public trial." However, the Sixth Amendment does not provide pre-indictment protection; it does not "require the Government to discover, investigate, and accuse any person within any particular period of time." *United States v. Marion*, 404 U.S. 307, 313 (1971). Although the statutes of limitations provide the primary guarantee against the prosecution of stale criminal charges, "the Due Process Clause of the Fifth Amendment also plays a 'limited role' in protecting against excessive preindictment delay." *United States v. Brown*, 959 F.2d 63, 65 (6th Cir. 1992) (quoting *United States v. Lovasco*, 431 U.S. 783, 789 (1977)). The Sixth Circuit reads *Lovasco* and its progeny to hold that " '[d]ismissal for pre-indictment delay is warranted only when the defendant shows [1] substantial prejudice to his right to a fair trial and [2] that the delay was an intentional device by the government to gain a tactical advantage.' " *Brown*, 959 F.2d at 66 (quoting *United States v. Brown*, 667 F.2d 566, 568 (6th Cir. 1982) (per curiam) (emphasis added); *accord United States v. Lawson*, 780 F.2d 535, 541 (6th Cir. 1985) (per curiam)). "A showing of prejudice to the defendant, without more, is not enough to prove a due process violation; rather, there must also be a consideration of the reasons for the delay." *Brown*, 959 F.2d at 66 (*citing United States v. Atisha*, 804 F.2d 920, 928 (6th Cir. 1986); *accord United States v. DeClue*, 899 F.2d 1465, 1468–69 (6th Cir. 1990)).

Knox was indicted in 2016 in a five-count indictment charging three counts of rape and two counts of kidnapping, both of which events occurred in August 1999. Knox moved on January 30, 2018, to dismiss the indictment alleging that the prosecutor's delay in bringing the charges resulted in actual prejudice. (ECF No. 9-1, Ex. 9). Relying on *Ohio v. Jones*, 2016-Ohio-5015, Knox argued that the delay prejudiced him due to his lack of recollection as to the events of August 1999 and his inability to locate witness(es) who would have been able to "offer direct and circumstantial evidence of the consensual nature of his and the alleged victims' sexual activity[.]" (ECF No. 9-1, Ex. 9 at PageID #: 269-270). Additionally, Knox argued that his constitutional right to confrontation would be denied since the alleged victim was unavailable due to her (unrelated) death. (ECF No. 9-1, Ex. 9 at PageID #: 270). On March 28, 2018, the state court held a hearing on Knox's motion to dismiss for preindictment delay. (ECF No. 9-1, Ex. 12). On April 4, 2018, the trial court denied Knox's motion to dismiss (ECF No. 9-1, Ex. 13).

Knox argues that had he been indicted earlier, he could have called two witnesses who would have testified that they saw him have sex with each of the alleged victims in exchange for drugs. He also argues that had he been indicted and tried earlier, he could have cross examined the deceased victim and the other victim would not have been as presentable as she would still have been addicted to drugs.

The state appellate court evaluated the merits of Knox's arguments in Ground One and found:

> {¶31} In his first assignment of error, Knox contends that the trial court erred in denying his motion to dismiss for preindictment delay.
>
> {¶32} In reviewing a trial court's decision on a motion to dismiss for preindictment delay, this court applies a de novo standard of review to the legal issues, but we afford great deference to the findings of fact made by the trial judge. *State v. Hunter*, 2017-Ohio-4180, 92 N.E.3d 137, ¶ 16 (8th Dist.).

20

{¶33} The statute of limitations for a criminal offense is the defendant's primary protection against overly stale criminal charges. *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). However, the Due Process Clause of the Fifth Amendment provides additional protection in cases where the preindictment delay was unjustifiable and caused actual prejudice. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 12.

{¶34} The Ohio Supreme Court has established a burden-shifting framework for analyzing a due process claim based on preindictment delay. *Jones* at ¶ 13. Under this framework, the defendant bears the initial burden of presenting evidence of actual prejudice. *Id*. "Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay." *Jones* at ¶ 13, citing *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998); *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 99. Thus, if the defendant fails to establish actual prejudice, the court is not required to consider the reasons for the delay. *Adams* at ¶ 107.

{¶35} "A court must 'consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay.' " *Id*., quoting *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52. A claim of actual prejudice should be scrutinized "vis-a-vis the particular evidence that was lost or unavailable as a result of the delay" and "the relevance of the lost evidence and its purported effect on the defense." *Id*. at ¶ 23.

{¶36} Knox contends that he demonstrated actual prejudice because Mosley and Campbell died during the 17-year delay between the offenses and his indictment. Knox contends that had they testified consistently with his version of events, they would have bolstered his defense that he and the victims engaged in consensual sex, minimizing the impact of the state's evidence that his DNA was present in the rape kits of both victims. Knox further contends that he was prejudiced by his inability to cross-examine P.H. as a result of her death. Thus, Knox asserts that he identified lost exculpatory evidence, thereby establishing actual prejudice to his ability to defend himself. We do not agree.

{¶37} The death of a witness, by itself, is not enough to establish actual prejudice. *Jones* at ¶ 26. Although a defendant is not required to establish precisely what an unavailable witness would have

21

testified to at trial, "there must be some indication in the record of what the missing evidence or unavailable witness might have offered." *State v. Richardson*, 2016-Ohio-5843, 780 N.E.3d 1175, ¶ 13 (8th Dist.). Here, because neither Mosley nor Campbell were ever identified as witnesses, there is nothing in the record demonstrating what their unavailable testimony might have offered.

{¶38} Indeed, there is nothing in the record to demonstrate their testimony was "lost" because nothing in the record supports Knox's assertion that Mosley and Campbell were witnesses to the events of August 24, 1999, and August 31, 1999. J.S. and P.H. each gave detailed accounts of what happened to them to the police and the medical professionals who treated them yet neither woman mentioned or even alluded to the presence of any person other than the assailant. In light of their detailed accounts of the incidents, and their failure to mention anyone other than the assailant, we find Knox's claim that Mosley and Campbell were with him when he had sex with J.S. and P.H. on those dates to be merely a self-serving claim, made after the DNA linked him to the crimes, to support his version of the events. *State v. Crymes*, 8th Dist. Cuyahoga No. 104705, 2017-Ohio-2655, ¶ 20.

{¶39} Moreover, it is highly speculative to assert that Mosley and Campbell would recall where Knox was on particular days in August 1999, especially in light of Knox's admission that he was not with them every day in August 1999 and that even he could not remember what he did every day that month. "The law requires a defendant to do more than offer mere speculation as to how he was prejudiced by any delay." *State v. Owens*, 8th Dist. Cuyahoga No. 102276, 2015-Ohio-3881, ¶ 5. Thus, we do not find that Knox established actual prejudice due to Mosley and Campbell's unavailability to testify.

{¶40} Nor do we find the death of P.H., one of the victims, to constitute actual prejudice to Knox. Knox speculates that he is prejudiced by P.H.'s death because, if she had testified, she might not have been able to identify him as her attacker or she might have testified that the sex was consensual. Again, mere speculation does not show actual prejudice. *Id*.; *State v. Wilson*, 8th Dist. Cuyahoga No. 102921, 2016-Ohio-2718, ¶ 70. Despite P.H.'s death, significant other evidence existed upon which Knox could challenge the charges regarding P.H.; for example, he could cross-examine the police who created the police report and the medical personnel who treated P.H. at the hospital. Accordingly, Knox has not established actual prejudice.

22

{¶41} Moreover, even if Knox had established actual prejudice, the state produced evidence of a justifiable reason for delay in the commencement of prosecution. A delay may be found unjustifiable when the state's reason for the delay is to intentionally gain a tactical advantage over the defendant, "or when the state, through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased." *State v. Luck*, 15 Ohio St.3d 150, 158, 472 N.E.2d 1097 (1984). There is nothing in the record to suggest that the state used the delay in this case to gain a tactical advantage over Knox, or that the state ceased its investigation and then, without new information, decided to prosecute.

{¶42} The record demonstrates that rape-kit examinations were conducted upon both J.S. and P.H. in 1999. However, there was no CODIS hit for P.H. until 2006. Despite investigation, P.H. could not be located and, therefore, per departmental policy, her case was held in abeyance. P.H.'s case was reopened in 2014, after the police for the first time learned there was a CODIS hit for Knox on J.S.'s rape kit, and thus, that Knox might have been involved in two rapes. In light of these facts, there is nothing to suggest that the reasons for the delay in indicting Knox were for anything other than investigative purposes.

{¶43} Accordingly, the trial court did not err in denying Knox's motion to dismiss for preindictment delay, and the first assignment of error is overruled.

*State v. Knox*, 2019-Ohio-1246, ¶¶ 31-43.

The Ohio Court of Appeals applied the correct standard to Knox's claim, observing that a due process violation based on pre-indictment delay requires a defendant to show both substantial prejudice and a delay that was intentionally caused by the government to gain a tactical advantage. *Knox*, 2019-Ohio-1246 at ¶¶ 33–34; *Lovasco*, 431 U.S. at 789–790 (to prevail on a claim of due process violation by a pre-indictment delay, the defendant must show actual prejudice and intentional government delay for the purpose of gaining a tactical advantage); *Marion*, 404 U.S. at 325–326. The Ohio Court of Appeals explained that Knox could not satisfy either prong. It correctly determined that Knox's argument that the two witnesses would testify that they watched

23

him have consensual sex with both victims in exchange for money was speculative. Knox has no proof of what these witnesses would have said beyond his own self-interested speculation. *See Hawkins v. Shoop*, No. 3:19-CV-072, 2019 WL 7282246, at *3 (S.D. Ohio Dec. 27, 2019) ("In this case, the testimony of the absent or deceased witnesses could have helped Hawkins, but he had no proof of what they would have testified to beyond his own self-interested speculation."), *report and recommendation adopted*, No. 3:19-CV-072, 2020 WL 1163824 (S.D. Ohio Mar. 11, 2020); *see also Patterson v. Clipper*, No. 1:18CV1073, 2019 WL 8015207, at *9 (N.D. Ohio Nov. 5, 2019), *report and recommendation adopted*, No. 1:18-CV-1073, 2020 WL 870977 (N.D. Ohio Feb. 21, 2020). Additionally, the appellate court did not unreasonably determine that that the death of P.H., one of the victims, did not constitute actual prejudice to Knox. Knox speculates that he was prejudiced by P.H.'s death because she may not have been able to identify him as her attacker had she testified, or she might have testified that the sex was consensual. Again, Knox offers no support for this speculative testimony.[2]

Overall, the evidence presented conflicts with Knox's proffered testimony. There was no dispute that Knox previously had sex with the victims and that the victims thereafter sought medical attention and reported that they had been raped and beaten. Before this Court, as on direct appeal, Knox fails to explain how the lack of these witnesses actually prejudiced him. In short, he does not show that the Ohio Court of Appeals' decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *Harrington*, 562 U.S. at 103.

Moreover, Knox has presented no evidence that the pre-indictment delay was the result of an intent to gain a tactical advantage over his defense. *See Brown*, 959 F.2d at 6. "[P]articularly

---

[2] The Court will address the Confrontation Clause argument in the analysis of Ground Four.

where the delay is investigative rather than intended to gain a tactical advantage over the accused, preindictment delay does not offend the Fifth Amendment." *Id*. (citing *Lovasco*, 431 U.S. at 795). As the appellate court explained in detail that the delay related to Knox was for investigative purposes and Knox has offered no rebuttal to these facts in any way, his claim fails.

Ground One should be denied.

## B. Ground Two

In Ground Two, Knox argues that the trial court erred when it denied his motion for relief from prejudicial joinder. (ECF No. 1 at 21). Specifically, Knox argues that he was prejudiced by the joinder of the offenses against each of the two witnesses because the joinder allowed the jury to hear evidence of other acts, which would not have come in if the offenses were tried separately.

Knox raised the issue of misjoinder in both his direct appeal and at the Ohio Supreme Court.  However, he relied exclusively upon Ohio law. Nothing in his state court arguments could be reasonably construed as raising a federal constitutional claim: Knox claimed a violation of Ohio Rules of Criminal Procedure and relied solely on Ohio law in his argument that he was unfairly prejudiced by the joinder. (*See* ECF No. 9-1, PageID #: 348-350). The state appellate court similarly referenced only Ohio law in resolving the claim. Here, Knox has raised the same issue in the instant petition by directing the Court to review his state court appellant's brief. Accordingly, Knox has not brought a federal claim. Thus, Ground Two is not cognizable. *See Bates*, 934 F.2d at 101 (A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all.").

Even if the Court were to interpret Ground Two as raising a federal claim, it is procedurally defaulted. Before seeking federal habeas relief, state prisoners must first exhaust their available state court remedies by fairly presenting all their claims to the state courts. *Whiting v. Burt*, 395

F.3d 602, 612 (6th Cir.2005). Ordinarily, the exhaustion requirement is satisfied once the petitioner has fairly presented all his claims to the highest court in the state in which he was convicted, thus giving the state a full and fair opportunity to rule on those claims before the petitioner seeks relief in federal court. *O'Sullivan*, 526 U.S. at 842. This can be done by invoking one full round of the state's established procedures. *Id*. Moreover, "[f]or the claim to be exhausted, it must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law." *Dugas*, 2022 WL 485306, at *1 (citing *Koontz*, 731 F.2d at 369). As noted above, Knox failed to present this issue as a federal claim to the state appellate court. Accordingly, Knox failed to fairly present this claim to the state court and thereby failed to exhaust this claim. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." (citations omitted)). Because under Ohio App. R. 4(A)(1) and Ohio Rev. Code. § 2953.21(A)(2)(a) Knox can no longer bring this argument to state court, his argument is procedurally defaulted.[3] *See Adams*, 2016 WL 6610219, at *2 ("When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." (citing *O'Sullivan*, 526 U.S. at 848)). "A federal habeas court need not review a procedurally defaulted claim unless the petitioner can show either cause for the default and actual prejudice from the alleged constitutional violation, or that failure to consider the claim would result in a 'fundamental miscarriage of justice[.]'" *Id*. (quoting *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991)). Knox

---

[3] Ohio App. R. 4(A)(1) gives 30 days to appeal from a final order. Ohio Rev. Code. § 2953.21(A)(2) allows 365 days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment to petition for postconviction relief. Both of these dates have passed in this case.

does not argue that he meets either of these exceptions. Thus, Knox procedurally defaulted on Ground Two.

Because the Respondent did not argue that Ground Two was not cognizable nor procedurally defaulted, the Court also notes that Ground Two fails on the merits as Knox cannot demonstrate actual prejudice.

"[A]n error involving misjoinder affects substantial rights and requires reversal only if the misjoinder results in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Lane*, 474 U.S. 438, 449, 106 S. Ct. 725, 732, 88 L. Ed. 2d 814 (1986) (internal quotation marks and citations omitted). "Misjoinder is unconstitutional only if it results in prejudice so great as to deny a defendant his due process right to a fair trial." *Lamar v. Houk*, 798 F.3d 405, 428 (6th Cir. 2015). "The prejudice that [a petitioner] must demonstrate, however, in order to justify a grant of a writ of habeas corpus is actual prejudice, not merely the potential for prejudice." *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007) (internal citations omitted). "[T]he danger of prejudice resulting from improper propensity inferences can be reduced significantly," when, as in this case, the court issues "proper curative instructions" for the jury to "consider separately ... the evidence that relates to each charge." *See United States v. Chavis*, 296 F.3d 450 at 461-62 (6th Cir. 2002) (citing *Lane*, 474 U.S. at 450 n.13, 106 S.Ct. 725).

Here, even assuming that the joinder was improper, Knox cannot establish that joinder of the offenses had a substantial and injurious effect on the jury's verdict. Evidence of each crime was simple and distinct: the crimes involved separate incidents; occurred on different dates; and the crimes had different victims. The State presented testimony and evidence regarding the offenses separately. Additionally, the trial court provided a limiting instruction to the jury. The trial court specifically instructed the jury that: "The charges set forth in each count of the

indictment constitute a separate and distinct matter. You must consider each count and the evidence applicable to each count separately, and you must state your findings as to each count uninfluenced by your verdict as to any other count. The Defendant may be found guilty or not guilty of any one or all of the offenses." (ECF No. 9-3, PageID #: 1247-1248). Accordingly, even assuming that the joinder was improper, Knox cannot demonstrate that he was actually prejudiced by the joinder.

Because Ground Two is not cognizable, this Court should dismiss ground two. Alternatively, Ground Two should dismissed as it is procedurally defaulted and/or denied on the merits.

### C. Ground Three

In Ground Three, Knox asserts that his convictions were against the manifest weight of the evidence. Although manifest weight challenges are not cognizable in federal habeas proceedings, *Nash v. Eberlin*, No. 06–4059, 2007 WL 4438008, at *3 n. 4, 258 F. App'x 761 (unpublished) (6th Cir. Dec. 14, 2007), holds that when a federal pro se habeas litigant makes a manifest weight of the evidence claim, after presentment and adjudication in the Ohio courts, a rule of lenient construction of pro se pleadings applies to construe the manifest weight claim as a sufficiency of the evidence claim. Accordingly, this Court should construe Knox's third ground for relief as a challenge to the sufficiency of the evidence presented against him.

A conviction is not supported by sufficient evidence if a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In this habeas proceeding, however, the Court is not allowed to conduct a *de novo* review of the Ohio state court's application of that rule. Instead, this Court must review its sufficiency of the evidence decision under the highly deferential

standard set by the AEDPA. Under that statute, Knox can only be granted habeas relief if the Ohio Court of Appeals made an unreasonable application of the *Jackson* standard. See 28 U.S.C. § 2254(d)(1); *Getsy v. Mitchell*, 495 F.3d 295, 315–316 (6th Cir. 2007) (*en banc*). Thus, it is not this Court's duty to determine whether a rational trier of fact could have found that Knox committed the essential elements of his offenses of conviction. That was the job of the Ohio Court of Appeals. The task for this Court is to determine whether it was objectively unreasonable for the Ohio Court of Appeals to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that Knox committed the essential elements of those offenses beyond a reasonable doubt. *See, e.g., McFowler v. Jaimet*, 349 F.3d 436, 447 (7th Cir. 2003).

The Ohio Court of Appeals rejected Knox's argument as follows:

{¶57} Knox contends that the jury "lost its way" in convicting him because (1) neither victim identified him as the assailant; (2) the state failed to establish that he was present at or around the time of the offenses; and (3) the state failed to properly investigate the case because it did not test some of the evidence in the rape kits from each victim. Knox contends that the only evidence linking him to the rapes and kidnappings was his DNA, which established only that he engaged in sexual conduct with the victims, not that he was the assailant. Knox's arguments are meritless.

{¶58} First, simply because J.S. and P.H. did not identify Knox in a lineup or photo array that included his photograph does not mean his convictions are against the manifest weight of the evidence. As this court has recognized, although the state must establish beyond a reasonable doubt that the defendant committed the crimes at issue, there is no requirement the defendant be specifically identified as the perpetrator of a crime by a witness testifying in court or during a photo array or lineup to uphold the defendant's conviction. *State v. Muhammad*, 8th Dist. Cuyahoga No. 104111, 2016-Ohio-8322, ¶ 23. Circumstantial evidence is sufficient to establish the defendant as the person who committed the crime. *Id.*

{¶59} And, contrary to Knox's assertion that neither victim identified him as the assailant, the record reflects that although J.S.

did not identify Knox in the photo array, she identified him in court as the perpetrator. She admitted that she was unable to identify Knox in the photo array, but testified that when the investigators eventually pointed out his picture, "it all came back to [her]." Thus, there was an in-court identification. The jury heard Dziuba's testimony that the investigators pointed out Knox's picture to J.S. only after the photo array process was completed, and J.S.'s testimony regarding her in-court identification, and could judge her credibility regarding the identification.

{¶60} Furthermore, there was compelling, competent, and credible DNA evidence linking Knox to these crimes. Bizub testified that one would have to cross "a billion earths" to find an individual with the same profile as Knox with respect to his DNA sample that was found on the vaginal swabs in both victim's rape kits. Thus, the DNA evidence overwhelmingly supported the jury's conclusion that Knox was the attacker. *See Muhammad* at ¶ 24. In light of this overwhelming evidence, we find no merit to Knox's argument that the state failed to adequately investigate the case because the fingernail scrapings and clothing collected from both victims was not tested for DNA. Both victims reported they had been vaginally raped and that the attacker ejaculated inside them. Thus, the presence of Knox's DNA on the vaginal swabs from both rape kits demonstrated he was the assailant.

{¶61} Knox also contends that there was no evidence that he was present when the alleged offenses occurred because the state presented no eyewitness testimony to the incidents. But the state presented evidence that the offenses were committed only two and one-half miles apart, in the general area where Knox resided in August 1999. In addition, the state presented evidence that the offenses were very similar. Both women were walking alone around 3 a.m., both were grabbed suddenly and pushed to the ground in a field or behind bushes, both were struck in the face and torso by the assailant with his fist, and both were choked when they tried to resist. The jury was free to accept this circumstantial evidence, combined with J.S.'s in-court identification and the unequivocal DNA evidence, and conclude that Knox was the perpetrator.

*State v. Knox*, 2019-Ohio-1246, ¶¶ 57-61.

Based upon the above, this Court cannot say that the state court unreasonably determined that there was sufficient evidence for a rational juror to convict Knox. Two victims described being raped under remarkably similar circumstances.  Both victims reported the rape immediately and

went to the doctor to have a rape kit completed.  Based upon those kits, it was determined that Knox's DNA was *inside* both victims.  As such, there was more than ample evidence to convict Knox.  Knox's sole contention appears to be that the jury should have believed his version of events that included consensual sex with both victims.  However, the jury was under no obligation to believe Knox and was in fact in the best position to judge his credibility.  As such, his claim regarding the sufficiency of the evidence offered in support of his convictions should be found to lack merit.

### D.  Ground Four

In his final ground for relief, Knox contends that his right of confrontation was violated when the state court allowed statements from the deceased victim to be admitted against him. The state court rejected Knox's argument as follows:

> {¶65} The Sixth Amendment of the U.S. Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the admission of a testimonial out-of-court statement of witness who does not appear at trial violates the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness.
>
> {¶66} The Confrontation Clause does not bar the admission of hearsay statements that are not testimonial. *Davis v. Washington*, 547 U.S. 813, 823, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, ¶ 21. Indeed, where nontestimonial hearsay is at issue, the Confrontation Clause is not implicated and need not be considered. *Whorton v. Bockting*, 549 U.S. 406, 420, 127 S.Ct. 1173, 167 L.E.2d 1 (2007).
>
> {¶67} Although it has not defined "testimonial," in *Crawford*, the U.S. Supreme Court stated generally that the core class of statements implicated by the Confrontation Clause includes statements "made under circumstances which would lead an objective witness to reasonably believe that the statement would be available for use at a later trial." *Crawford* at 52. The Supreme Court found that at a

31

minimum, testimonial evidence includes prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and statements made during police interrogations. *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 144, citing *Crawford* at 68.

{¶68} The Supreme Court subsequently clarified that statements made during a police interrogation are nontestimonial if made under circumstances indicating the purpose of the interrogation is to assist the police with an ongoing emergency. *Davis* at 822. Statements to law enforcement are testimonial where there is no ongoing emergency and the primary purpose of the interrogation is to establish past events for later prosecution. *Id.*

{¶69} We conclude that P.H.'s statements to the police were not testimonial because the police responded to her home almost immediately after the incident, and her statements were made to assist the police with an ongoing emergency.[5] Davis identified four characteristics of a statement that meet the emergency exception: (1) the witness describes contemporaneous events rather than events that occurred hours earlier, (2) an objective emergency exists, (3) the questions are necessary to resolve the emergency, and (4) the interview is of an informal nature. *State v. Clark*, 8th Dist. Cuyahoga No. 103324, 2016-Ohio-4561, ¶ 38, citing *Davis*, 547 U.S. at 826-830, 126 S.Ct. 2266, 165 L.Ed.2d 224.

{¶70} Here, the record demonstrates that after the rape, P.H. flagged down an EZP vehicle shortly after the attack, and the driver drove her home and advised that she call 911. The police arrived at her home shortly after the 911 call and assessed her needs. Her attacker was unknown to her and still at large, and P.H. had yet to be transported to the hospital. In *Clark*, under similar circumstances, this court concluded that the victim's primary purpose in talking to the police was to receive assistance, and the primary purpose of the police in talking to the victim was to assist her, rather than to develop testimony about past events for a criminal proceeding. *Id.* at ¶ 40.

{¶71} Considering the totality of the circumstances, we conclude that P.H.'s statements to the police were not testimonial. Therefore, the trial court did not err in admitting them into evidence under the excited utterance exception to the hearsay rule, which allows the admission of a hearsay "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). The fourth assignment of error is overruled.

32

*State v. Knox*, 2019-Ohio-1246, ¶¶ 65-71.[4]

The Sixth Circuit has noted previously the often less-than-clear line that is drawn between

testimony and nontestimonial statements.

> As *Davis*'s assessment of the 911 call and the on-the-scene
> statements indicates, the line between testimonial and
> nontestimonial statements will not always be clear. Even if bona fide
> 911 calls frequently will contain at least some nontestimonial
> statements (assuming the emergency is real and the threat ongoing)
> and even if a victim's statements to police at the scene of the crime
> frequently will contain testimonial statements (assuming the
> emergency has dissipated), that will not always be the case, and
> difficult boundary disputes will continue to emerge. Each victim
> statement thus must be assessed on its own terms and in its own
> context to determine on which side of the line it falls.

*United States v. Arnold*, 486 F.3d 177, 189 (6th Cir. 2007) (discussing *Davis v. Washington*, 547

U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)).

Knox does not explain in his petition or traverse which statements by the victim are

prejudicial; instead, Knox refers the Court to his appellate brief. (*See* ECF No. 1, PageID #: 10

("Please refer to Appellant's Brief and Assignments of Error").  Although Ground Four references

the victim's statements to both police and medical professionals, Knox's appellate argument – and

the only argument presented to this Court – addresses only the statements contained in a police

report recounting the victim's account of the attack on the day of the event. (ECF No. 1-1, PageID

#: 50-51). The history of the admission of those statements is as follows: During trial, the State

called Investigator Sonya Dziuba to testify regarding her investigation of this matter beginning in

---

[4] Footnote 5 of the decision states "Despite Knox's assertion that 'P.H. first encountered
the police at the hospital, hours after the incident,' the record reflects that the police met P.H. at
her home, shortly after the incident. Cleveland Police Detective Eugina Gray testified that she
responded to P.H.'s home shortly after the alleged rape and kidnapping, and based upon what P.H.
told her, made arrangements for P.H. to be transported to the hospital. (Tr. 590-593.)". *State v.
Knox*, 2019-Ohio-1246, ¶69, n.5.

2018. On cross examination, defense questioned Dziuba about statements contained in a three-page report dated August 6, 2014 – marked as Defense Exhibit A, that were made by Detective Nate Pursley who was investigating the matter at that time. Dziuba had reviewed Pursley's report during her investigation and testified that Pursley's notes indicated there was a potential female witness to the alleged rape. On redirect, the State asked Dziuba to read the victim's narrative also contained in Defense Exhibit A. Dziuba then read into the record the victim's original narrative as recounted by the reporting officer, which indicated there were no witnesses to the offense.

On appeal, Knox argued that the victim's statement was not obtained until a significant amount of time had passed and she had completed her medical treatment. (*See* ECF No. 9-1, PageID #: 358 ("P.H. first encountered the police at the hospital, hours after the incident was alleged to have occurred."). Knox argued that the statement was testimonial because the victim was "in a safe place in the custody of medical professionals" and that the statement was made "to the police at the hospital after the alleged incident had occurred, … during the course of an interrogation[.]" (ECF No. 9-1, PageID #: 358). The appellate court determined, however, that the statement was made prior to the victim being transported to the hospital. *See State v. Knox*, 2019-Ohio-1246, ¶69, n.5. ("Despite Knox's assertion that 'P.H. first encountered the police at the hospital, hours after the incident,' the record reflects that the police met P.H. at her home, shortly after the incident. Cleveland Police Detective Eugina Gray testified that she responded to P.H.'s home shortly after the alleged rape and kidnapping, and based upon what P.H. told her, made arrangements for P.H. to be transported to the hospital. (Tr. 590-593.)"). Knox has not rebutted the state appellate court's factual findings by clear and convincing evidence. Accordingly, this Court must presume that the state appellate court's factual findings are correct. *See* 28 U.S.C. §2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013).

Given the holding of *Davis*, the state appellate court was not unreasonable in determining that the information related during the victim's 911 call and her statements to officers responding to her home prior to her transport via EMS were nontestimonial. As explained by the state appellate court, immediately following her rape, the victim flagged down an EZP vehicle to take her home and called 911; the police arrived at the victim's home shortly after the 911 call and obtained a statement from the victim describing the attack and her attacker, who was still at large. These statements, although they contained information later used against Knox at trial, were properly allowed as an excited utterance. *See Davis*, 547 U.S. at 826-830.

Even if the victim's statement was made to police after the completion of her medical care and deemed testimonial, any error in allowing the statement was harmless. Assuming that Knox could conceivably claim that his right of confrontation was violated, this claimed violation is subject to harmless error review.

This Court evaluates whether a Confrontation Clause violation was harmless using the list of factors articulated in *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); s*ee also Jensen v. Romanowski*, 590 F.3d 373, 379 (6th Cir. 2009). They "include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. 1431.

Here, the information contained in the victim's narrative statement to police was directly cumulative of the information given to her medical provider, Dr. Haluska. The record indicates that Dr. Haluska examined the victim, and there is no indication that law enforcement was present for or involved in that examination. In that regard, another member of this Court has noted:

35

> Courts have generally held that statements provided to a social worker or medical provider, without the presence of law enforcement, are not considered testimonial. For example, in *Peneaux, supra*, the defendant challenged his conviction for aggravated sexual abuse of a child. The defendant, in part, contended that statements by the victim to an examining doctor should be considered inadmissible because of their testimonial nature. The court held, in part, that the questioning by the doctor "lacked the 'formality of ... questioning,' the substantial 'government involvement,' and 'the law enforcement purpose' present in *Bordeaux*." 432 F.3d at 896 (citing *U.S. v. Bordeaux*, 400 F.3d 548, 555–56 (8th Cir. 2005)).

*Rice v. Hudson*, No. 1:06CV2264, 2009 WL 2410436, at *4 (N.D. Ohio Aug. 4, 2009).  Based upon that analysis, the *Rice* decision concluded that no Confrontation Clause issue arose.  *Id.*

Here, Dr. Haluska testified that the victim complained of bilateral rib and flank pain and described a sexual assault. Dr. Haluska testified that the victim reported that she had been walking down the street when a male grabbed her by the neck, dragged her behind some bushes, hit her with his fists, choked her when she tried to resist, and then vaginally and rectally raped her.  As the information was properly admitted through Dr. Haluska, Knox cannot demonstrate any prejudice through its introduction in the police report. Moreover, Dr. Haluska was subject to full cross-examination regarding the statements he received from the victim, and physical evidence from the victim's medical examination corroborated the events she described.  Accordingly, any error in the admission of the police report containing the deceased victim's narrative account of her rape was harmless.

This fourth ground for relief should be denied.

## VII.  Certificate of Appealability

### A.  Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on

appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

**B.    Analysis**

Knox's grounds for relief are meritless or in the case of ground two, not cognizable. If the Court accepts the foregoing recommendation, then Knox has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

**VIII.   Recommendation**

Knox has presented only meritless or not cognizable claims. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

DATED: December 28, 2022

    *s/Carmen E. Henderson*
    Carmen E. Henderson
    United States Magistrate Judge

_____

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).